FILED

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF VIRGINIA**

| | |
|---|---|
| LG DISPLAY CO., LTD., | Civil Action No.  06-726 (JJF) |
| Plaintiff, | 1:09mc4 |
| v. | CONSOLIDATED CASES |
| CHI MEI OPTOELECTRONICS CORPORATION, et al. | |
| Defendants. | |

**NON-PARTY BIRCH, STEWART, KOLASCH & BIRCH LLP'S MOTION TO QUASH
A SUBPOENA ISSUED BY DEFENDANT CHI MEI OPTOELECTRONICS
CORPORATION AND FOR PROTECTIVE ORDER**

Non-Party Birch, Stewart, Kolasch & Birch LLP ("BSKB") respectfully moves the Court

to quash the subpoena directed to BSKB and issued by Chi Mei Optoelectronics Corp. ("CMO")

on January 9, 2009 in the above captioned case (the "January 9, 2009 Subpoena to BSKB"), or in

the alternative, for a protective order.

**INTRODUCTION**

BSKB moves to quash a *third* subpoena from CMO that seeks discovery concerning a

patent infringement case pending in the U.S. District Court for the District of Delaware (the

"Delaware Case").  CMO previously served two other subpoenas on BSKB for the same type of

discovery sought in CMO's third subpoena.  The Court should quash the subpoena because: (1)

the third subpoena is untimely and issued after the deadline to complete third party discovery in

the Delaware Case; (2) CMO's previous subpoena in September 2008 included the same

deposition topics as the third subpoena, and CMO specifically decided not to proceed with any

deposition of BSKB on those topics; (3) BSKB already provided discovery to CMO in response

1

to CMO's two previous subpoenas concerning the Delaware Case and the third subpoena is duplicative, cumulative, and harassing; (4) the deposition topics are overly broad and unduly burdensome, and the subpoena failed to provide a reasonable time to testify on those topics; (5) CMO already has obtained any discovery that it needs concerning the subject matter of the third subpoena and has no need to depose BSKB; and (6) the subpoena seeks information protected by the attorney-client privilege.

Despite the unreasonable scope of the third subpoena, and the unfair burden it would impose on BSKB, CMO has failed to narrow in any way the deposition topics. Indeed, CMO issued the subpoena with the same twenty-four deposition topics that CMO included in its September 2008 subpoena, even though BSKB had objected to those topics previously and CMO had affirmatively abandoned any deposition on those topics. Accordingly, BSKB respectfully requests that the Court quash the third subpoena, or, alternatively, modify and limit the subpoena to avoid any burden on BSKB. BSKB also requests an award of costs and attorneys' fees.

## STATEMENT OF FACTS

## I.   THE UNDERLYING PATENT INFRINGEMENT CASE IN DELAWARE

The underlying Delaware Case is a complex patent infringement lawsuit dealing with liquid crystal display (LCD) technology. (Declaration of John Lomas in Support of Motion to Quash ("Lomas Decl." ¶¶ _.) It involves LG Display Co., Ltd. ("LG Display"), as Plaintiff, and CMO and AU Optronics Corp. ("AUO") as Defendants. (*Id.*) LG Display originally filed suit in December of 2006. CMO and AUO responded by filing suits of their own, which were consolidated in the District of Delaware with LG Display's original suit. The Delaware Case now involves twenty three patents; LG Display is asserting nine patents against the defendants, and each of the defendants is asserting several patents against LG Display. (*Id.*) Three of the patents that LG Display is asserting in the Delaware Case are: United States Patent Nos.

2

5,904,274 (the "274 Patent"); 6,815,321 (the "'321 Patent"); and 7,176,489 (the "'489 Patent").

(*Id.*)

The fact discovery deadline and the deadline to complete third party discovery in the

Delaware Case expired on December 17, 2008. (*Id.*) At a discovery hearing on December 19,

2008, the Court granted an extension for the parties to complete party depositions by January 23,

2009, and to complete third-party depositions by January 30, 2009, if those depositions were

pending at the time of the December 19 hearing. (*Id.*) Most fact depositions, including Rule

30(b)(6) depositions, are now complete. (*Id.*) Expert discovery is scheduled to begin soon, with

opening expert reports currently due on February 20, 2009. (*Id.*)

## II.    LG DISPLAY HAS PROVIDED DISCOVERY CONCERNING THE '274 PATENT, '321 PATENT, AND '489 PATENT

CMO has obtained discovery from LG Display concerning the '274 Patent, '321 Patent,

and '489 Patent. (Lomas Decl. ¶¶ _.)  LG Display produced documents concerning those

patents to CMO. (*Id.*) Recently, CMO also deposed LG Display witnesses concerning the '274

Patent, '321 Patent, and '489 Patent, obtaining fact witness testimony and Rule 30(b)(6)

testimony from LG Display. (*Id.*)

Specifically, CMO deposed Mr. Hyun-Sik Seo, who testified individually and as a

designated witness in response to a Rule 30(b)(6) deposition notice that CMO served on LG

Display. (*Id.*) Mr. Seo was deposed for an entire day. (*Id.*) CMO also deposed another Rule

30(b)(6) witness from LG Display, Mr. Youngwoo Cho, who testified for two days concerning

patent prosecution and other topics. (*Id.*) Mr. Cho testified about the '274 Patent, '321 Patent,

and '489 Patent during his deposition. (*Id.*)

### III.   BSKB HAS PROVIDED DISCOVERY CONCERNING THE '274 PATENT, '321 PATENT, AND '489 PATENT IN RESPONSE TO PREVIOUS SUBPOENAS

CMO served subpoenas on BSKB and individual attorneys at the BSKB law firm in September 2008 and October 2008. (Lomas Decl. ¶¶.)  On September 17, 2008, CMO issued a subpoena to BSKB seeking the production of documents and testimony on twenty-four (24) deposition topics ("September 17, 2008 Subpoena"). (Ex. 1.)[1]  On the same day, CMO also issued subpoenas to three individual BSKB attorneys – Joseph A. Kolasch, James T. Eller, and Esther H. Chong – seeking the production of documents ("Individual Attorney Subpoenas"). (Exs. 2-4.) The individual subpoena to Mr. Eller also sought deposition testimony. (Ex. 2.)

BSKB is an intellectual property law firm, with its primary office in Falls Church, VA and a small office in San Diego, California.  BSKB is not a party in the Delaware Case.  BSKB's only role concerning the subject of the Delaware Case was BSKB's role in prosecuting U.S. Patent No. 6,815,321 (the "'321 Patent") and U.S. Patent No. 7,176,489 (the "'489 Patent), two of the twenty-three patents asserted in the Delaware Case.[2]

The September 17, 2008 Subpoena to BSKB and the Individual Attorney Subpoenas each included twenty-four document requests concerning the '321 Patent and '489 Patent. (Ex. 1.) The September 17, 2008 Subpoena to BSKB also included twenty-four deposition topics. (*Id.*)

On October 2, 2008, CMO issued a second subpoena to BSKB with twenty-four additional document requests concerning the '274 Patent, even though BSKB did not prosecute the '274 Patent (the "October 2, 2008 Subpoena"). (Ex. 5.)

---

[1] All exhibits are to the Declaration of John W. Lomas, Jr. filed in support of this motion.

[2] The '274 Patent, which is genealogically related to the '321 Patent and '489 Patent, was prosecuted by another firm.

BSKB and the three individually subpoenaed attorneys timely served responses and

objections to the September 17, 2008 Subpoena, the October 2, 2008 Subpoena, and the

Individual Attorney Subpoenas on October 13, 2008. (Ex. 6.) The objections included specific

objections to each deposition topics, including based on the overly broad, irrelevant, vague and

ambiguous nature of CMO's discovery requests.[3] (*Id.*) For example, the September 17, 2008

Subpoena to BSKB included deposition topics seeking testimony on:

> Any foreign counterpart patent or application of the Patents-in-Suit, including all
> documents filed with or received from foreign patent offices, all communications
> with foreign associates, patent agents, or prosecutors, all translations of such
> documents or communications, and all drafts of any of the foregoing documents
> or communications. (Ex. 1 at Topic 5.)

> Any lawsuits, disputes, contested proceedings, interferences, requests for
> reexamination, reexamination, oppositions, reissues, charges of infringement, or
> threats to sue that involved or involve the Patents-in-Suit, related patents, or
> related applications. (*Id.* at Topic 14.)

> Any searches or investigations, conducted during the prosecution of the Patents-
> in-Suit or the related patents or related applications, for prior art or other
> information regarding the patentability of the subject matter of the Patents-in-Suit
> or the related patents or related applications, including without limitation all
> documents obtained, identified or uncovered by any such search or investigation.
> (*Id.* at Topic 20.)

BSKB also objected to the subpoenas as invading the attorney-client privilege. The

September 17, 2008 Subpoena to BSKB included, for example, the following deposition topics

seeking privileged communications:

> Communications relating to the prosecution of the Patents-in-Suit or of the related
> patents or related applications, including, without limitation, communications to
> or from you, any inventor, any patent office, patent examiner, patent agent, patent
> attorney, or prior art searches. (Ex. 1 at Topic 3.)

> Communications relating to the Patents-in-Suit or the subject matter thereof, or
> the related patents or the related applications, including without limitation all

---

[3] BSKB and the individually subpoenaed attorneys sought and were granted an extension to file objections.

communications to or from you and/or communications to or from any third parties, including LG Display and/or any inventors. (*Id.* at Topic 12.)

Communications relating to this lawsuit or any other lawsuit involving the Patents-in-Suit, including without limitation all communications to or from you and/or communications to or from any third parties, including LG Display and/or any inventors, and all documents relating or referring to any such communications. (*Id.* at Topic 13.)

CMO did not limit or narrow the scope of any of its discovery requests despite BSKB's objections.

## IV.   NON-PARTY BSKB'S COMPLIANCE WITH CMO'S PRIOR SUBPOENAS

BSKB and individual attorneys produced responsive, non-privileged documents in response to the various CMO subpoenas, including the September 17, 2008 Subpoena and the October 2, 2008 Subpoena. The document production was completed on a rolling basis with the first production made on October 13, 2008, when BSKB served its responses and objections. (Ex 7.) This production included 432 pages of documents concerning the '274 Patent, '321 Patent, '489 Patent, and two genealogically related patents, United States Patent Nos. 6,340,610 (the "'610 Patent") and 6,548,829 (the "'829 Patent").

After the October 13, 2008 production, BSKB's counsel attempted to engage CMO's counsel in a discussion concerning the necessity and scope of any deposition. (Exs. 8-9.) BSKB reaffirmed its objections to the deposition, including objecting to the lengthy list of twenty-four deposition topics as overbroad, unduly burdensome, and harassing. BSKB did not see the need for any deposition testimony. Further, BSKB's counsel informed CMO's counsel that even if a deposition was needed, any testimony must be limited in scope and take into account the objections. CMO's counsel agreed to defer any deposition of BSKB and Mr. Eller, taking the depositions off-calendar for further discussion after BSKB completed its document production.

BSKB located and produced another 198 pages of documents on November 7, 2008. (Ex. 10.) On November 17, 2008, BSKB's counsel informed CMO's counsel that BSKB would be completing its document production the next day. (Ex. 11.) CMO's counsel confirmed that he understood that no responsive documents were being withheld except on the basis of privilege or work product. (*Id.*) On November 18, 2008, BSKB produced an additional 176 pages of documents. (Ex. 12.) BSKB promptly served its privilege log for withheld documents on November 28, 2008, and also produced two final documents, totaling 15 pages. (Ex. 13.) Thus, BSKB's document production was completed in November 2008.

On December 2, 2008, BSKB's counsel confirmed to CMO's counsel that BSKB's document production was complete. (Lomas Decl. ¶ 20.) CMO's counsel agreed not to proceed with any deposition of BSKB. (*Id.*) BSKB's counsel confirmed again that BSKB's document production was complete in a letter the next day. (Ex. 14.)

## V.    CMO AFFIRMATIVELY ABANDONS ANY DEPOSITION OF BSKB

On December 2, 2008, knowing that BSKB had completed its document production, CMO's counsel stated that CMO had no intention of deposing BSKB or Mr. Eller. (Lomas Decl. ¶ 20.) BSKB's counsel confirmed that there would be no deposition of BSKB in a letter to CMO's counsel on December 3, 2008. (Ex. 14.) CMO made no attempt to seek any deposition of BSKB pursuant to the September 17, 2008 Subpoena to BSKB before the discovery deadline of December 17, 2008 passed. (Lomas Decl. ¶ 22.)

## VI.   CMO'S THIRD SUBPOENA AFTER THE DISCOVERY DEADLINE PASSES

On January 9, 2009, more than three weeks after the discovery deadline in the Delaware Case, and more than five weeks after abandoning the deposition of BSKB, CMO issued a third subpoena to BSKB ("January 9, 2009 Subpoena."). (Ex. 17.) The January 9, 2009 Subpoena to BSKB sought deposition testimony on the same twenty-four overly broad, unduly burdensome,

7

and harassing deposition topics that CMO previously had included in the September 17, 2008

Subpoena to BSKB. That same day, CMO's counsel asked BSKB's counsel to accept service of

the January 9, 2009 Subpoena to BSKB, and, for the first time, indicated that CMO was now

switching course and attempting to revive the deposition of BSKB that CMO previously had

abandoned on December 2, 2008. (Lomas Decl. ¶ 23.)

     BSKB's counsel promptly responded and objected to CMO's tactics and the untimely

January 9, 2009 Subpoena to BSKB, and confirmed that he could therefore not accept service.

(Ex. 15.) CMO served the January 9, 2009 Subpoena to BSKB on January 14, 2009. BSKB

asked CMO to withdraw the January 9, 2009 Subpoena because it was untimely, sought

duplicative deposition testimony sought in the September 17, 2008 Subpoena to BSKB that

CMO had abandoned after BSKB completed its document production, provided insufficient

notice, and sought discovery that both LG Display and BSKB had already provided in the

Delaware Case. (Ex. 16.) BSKB's counsel also informed CMO's counsel that BSKB would

seek fees and costs if CMO persisted in pursuing its untimely and improper third subpoena.

CMO refused to withdraw the January 9, 2009 Subpoena to BSKB. BSKB then served its

objections to the subpoena and filed this motion.[4]

## ARGUMENT

## I.   CMO'S THIRD SUBPOENA TO BSKB IS UNTIMELY AND SHOULD BE QUASHED

     CMO served a first subpoena on BSBK in September 2008 and a second subpoena on

BSKB in October 2008. BSKB fully complied with those subpoenas by producing responsive

documents. The September 2008 subpoena, moreover, included the same twenty-four (24)

---

[4] CMO's counsel stated that CMO is willing to postpone the deposition to another date other than the scheduled date of January 28, 2009 for BSKB's deposition.

deposition topics that are set forth in CMO's third subpoena served in January 2009. BSK

objected to providing deposition testimony on those topics, including because the deposition was

unnecessary and the deposition topics are overly broad and seek information protected by the

attorney-client privilege. CMO contended that it needed BSKB's document production before

CMO could determine whether to abandon BSKB's deposition.

In November 2008, BSKB completed its document production. (Exs. 13-14.) On

December 2, 2008, CMO's counsel then confirmed that CMO would not proceed with any

deposition of BSKB. (Lomas Decl. ¶ 20; Ex. 14.) Accordingly, CMO affirmatively abandoned

any deposition of BSKB. On December 17, 2008, the deadline to depose third party witnesses in

the main case expired. At that time, no deposition of BSKB was pending and BSKB had

complied fully with CMO's September 17, 2008 subpoena and the October 2, 2008 subpoena.

After the December 17 deadline for third party discovery expired, CMO issued a third

subpoena to BSKB in an attempt to reopen discovery against BSKB. CMO cannot unilaterally

extend the time period for discovery established in the main case by serving a duplicative

subpoena after the discovery deadline. CMO's third subpoena, which was served on January 14,

2009, is untimely and should be quashed. *See Fincher v. Keller Indus., Inc.*, 129 F.R.D. 123

(M.D.N.C. 1990).

In *Fincher*, a party filed a motion in the U.S. District Court for the Middle District of

North Carolina to compel discovery sought under a deposition subpoena for use in a case

pending in the District of New Jersey. The Court denied the motion to compel because the

discovery was untimely under the schedule set by the District of New Jersey. As the Court

explained, "the parties' discovery rights in this district can rise no higher than their level in the

district of trial." *Id.* at 125. Thus, the Court concluded that unless and until the District of New

Jersey permitted the party to seek third party discovery after the deadline, the party "simply ha[d] no right to conduct the discovery here or elsewhere." *Id.* (noting that "discovery has ended and plaintiffs fail to show that they have any authority to conduct depositions and secure records in this District or in any other district for either discovery or trial.").

Similarly, CMO has no authority to issue a new subpoena seeking deposition testimony after the December 17 deadline. During a discovery hearing on December 19, 2008, the District of Delaware granted LG Display's request to extend the time to complete pending third party discovery by January 30, 2009. The Court granted that request. BSKB's deposition, however, was not pending as of the December 19, 2008 hearing. Rather, BSKB had fully complied with both of CMO's earlier subpoenas to BSKB, and CMO had abandoned any deposition testimony under those subpoenas. Accordingly, CMO's January 2009 subpoena is untimely, and the Court should quash the subpoena. *See Fincher*, 129 F.R.D. at 125; *see also Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A. 04-1371 JJF, 2006 WL 2604540, *3 (D. Del. Aug. 24, 2006) (stating that "the last date to complete fact witness depositions in this case was November 15, 2005, and Power Integrations has not demonstrated to the Court sufficient reason why discovery should be reopened at this late date.").

## II.   THE COURT ALSO SHOULD QUASH CMO'S THIRD SUBPOENA TO BSKB BECAUSE THE SUBPOENA IS REDUNDANT, CUMULATIVE, BURDENSOME, AND UNNECESSARY

Even if CMO had timely served the third subpoena, the subpoena is improper because: (1) it seeks redundant and duplicative discovery that CMO does not need and had ample opportunity to obtain; (2) it imposes an unreasonable burden on BSKB and provides insufficient time to prepare for and provide testimony; (3) it seeks overly broad testimony that is not necessary for any claim or defense in the main case; and (4) it seeks testimony concerning communications that are protected under the attorney-client privilege. For each of the foregoing reasons, the

Court should quash the January 2009 subpoena. Alternatively, the Court should issue an order modifying the subpoena and substantially limiting the scope and duration of any deposition of BSKB. *See, e.g.*, Fed. R. Civ. P. 26(b)(2)(C); Fed. R. Civ. P. 26(c)(1); Fed. R. Civ. P. 45(c)(3).

### A.   CMO's Third Subpoena Is Redundant, Cumulative and Harassing

CMO's third subpoena to BSKB is redundant, cumulative, and harassing. Rule 45 specifically provides that a court may quash a subpoena that is unduly burdensome. Fed. R. Civ. P. 45(c)(3)(A). Similarly, Rule 26 provides that a protective order may be used to prevent discovery that is "unreasonably cumulative or duplicative," or is "obtainable from some other source that is" more convenient, less expensive, or less burdensome. Fed. R. Civ. P. 26.

CMO has already obtained substantial discovery concerning the '321 Patent, the '489 Patent, and genealogically related patents. First, BSKB already has produced complete discovery to CMO by November 2008, including more than 800 pages of document production, at substantial burden and expense. Second, CMO has amassed substantial discovery from the party to the case, LG Display Co., Ltd., concerning the same '321 Patent and '489 Patent. CMO has taken depositions of LG Display witnesses, for example, relevant to those patents. CMO recently deposed an inventor, Mr. Hyun-Sik Seo, who testified individually and as a designated witness in response to a Rule 30(b)(6) deposition that CMO served on LG Display in this case. Mr. Seo testified for an entire day regarding the '274 Patent, the parent to the '321 Patent and '489 Patent. In addition, CMO has obtained LG Display's documents concerning the '321 Patent and '489 Patent. Further, CMO deposed another Rule 30(b)(6) witness from LG Display, Mr. Youngwoo Cho, for two days concerning patent prosecution and other Rule 30(b)(6) topics. CMO also has the entire patent file that includes all information in the official records of the U.S. Patent & Trademark Office concerning these patents. CMO thus has extensive information and discovery concerning the '321 Patent, '489 Patent, and '274 Patent.

CMO's third subpoena also is redundant and duplicative of previous subpoenas that CMO served on BSKB and individual BSKB attorneys in this case. Specifically, CMO previously served five subpoenas concerning BSKB's prosecution of the '489 Patent and '321 Patent -- *two* separate subpoenas on BSKB and *three* additional subpoenas on individual attorneys at the BSKB firm. Under those subpoenas, CMO also obtained all of the non-privileged files and documents concerning the prosecution of the '274 Patent, '321 Patent, '489 Patent, and two other genealogically related patents, United States Patent No. 6,340,610 (the "'610 Patent") and United States Patent No. 6,548,829 (the "'829 Patent"), in the possession, custody, or control of BSKB. CMO could have -- but affirmatively decided not to -- pursue a deposition of BSKB before the December 2008 deadline.

CMO thus has had every opportunity to obtain any relevant discovery concerning the '321 Patent, '489 Patent, and genealogically related patents, and has obtained such discovery, both from BSKB and from LG Display. CMO's September 2008 subpoena included the same deposition topics that are set forth in CMO's January 2009 subpoena. CMO waited to decide whether to take BSKB's deposition, however, until after BSKB produced documents. CMO then affirmatively abandoned any deposition of BSKB regarding the same deposition topics that CMO now seeks to pursue.

Under the circumstances, CMO obtained the information that it deemed necessary before the discovery deadline and cannot pursue redundant discovery under a third subpoena. *See Power Integrations, Inc. v. Fairchild Semiconductor Int'l, Inc.*, No. C.A. 04-1371 JJF, 2006 WL 2604540, *3 (D. Del. Aug. 24, 2006) (quashing subpoena because party had ample opportunity to pursue the same discovery under previous subpoenas). CMO is not entitled to pursue an entirely new and untimely subpoena against BSKB and to depose BSKB, after BSKB has

responded fully and complied with CMO's previous subpoenas in this case. Accordingly, the

Court should quash the subpoena or enter a protective order precluding any deposition of BSKB.

*See, e.g., Power Integrations, Inc.*, No. C.A. 04-1371 JJF, 2006 WL 2604540, *3; *Nova*

*Biomedical Corp. v. i-Stat Corp.*, 182 F.R.D. 419 (S.D.N.Y. 1998); Fed. R. Civ. P. 26(b)(2)

(court may prohibit discovery if "the party seeking discovery has had ample opportunity by

discovery in the action to obtain the information sought").

In *Nova Biomedical*, for example, a party served a second set of subpoenas that the Court

deemed repetitive to a prior subpoena in the same case. *Nova Biomedical Corp.*, 182 F.R.D. 419

(S.D.N.Y. 1998). After the Magistrate Judge quashed the duplicative subpoenas, the party

objected to that decision. The District Court upheld the order quashing the subpoena, however,

concluding that the discovery requests in the second subpoena were "'unreasonably cumulative

or duplicative' under Fed.R.Civ.P. 26, and Magistrate Judge Dolinger did not err in quashing

them, especially since Sturza had already complied with the first subpoenas, which asked for

much the same information." *Id.* at 423. The same reasoning applies with equal force here.

BSKB expended substantial time and effort to comply with CMO's earlier subpoenas in

this case. Accordingly, it is improper for CMO to now issue a new subpoena for the same

information, after CMO previously decided that it was not necessary to depose BSKB. The

Court should, therefore, quash CMO's third subpoena to BSKB.

**B.     CMO's Third Subpoena Imposes an Unreasonable Burden on BSKB**

CMO's third subpoena is unduly burdensome for several reasons. First, the January 2009

subpoena is the third subpoena that CMO has served on BSKB in this case, and BSKB already

has provided discovery in response to CMO's two previous subpoenas. In addition, the

subpoena failed to provide sufficient time for BSKB to prepare and appear for a deposition.

Further, the subpoena's deposition topics are overly broad and unreasonable in scope.

13

As discussed above, BSKB already has provided discovery to CMO in response to two subpoenas. CMO's attempt to serve a third subpoena on the same non-party is unreasonable, particularly considering that BSKB is not a party to this case. Therefore, the Court should quash the subpoena.

Further, CMO unilaterally scheduled the deposition of BSKB for January 28, 2009, only ten (10) business days after service of the subpoena. The subpoena includes twenty-four deposition topics, which would require substantial time to prepare to testify. In addition, BSKB is a law firm and any testimony would be provided through an attorney, requiring that attorney to schedule time to testify so as not to interfere with existing personal and professional commitments and obligations. CMO's unilateral scheduling of a deposition only ten (10) business days after service of the subpoena is not reasonable. Therefore, the Court should quash the subpoena.

In addition, the deposition topics are overly broad and unduly burdensome. BSKB specifically asserted objections to each of the deposition topics in detailed, written objections that BSKB served on October 13, 2008.[5] The January 2009 subpoena ignores all of BSKB's objections and simply restates each and every one of the twenty-four Rule 30(b)(6) topics that BSKB previously objected to in response to CMO's October 2, 2008 subpoena. By way of example, three of the twenty-four deposition topics include the following all-encompassing subjects:

> Any foreign counterpart patent or application of the Patents-in-Suit,
> including all documents filed with or received from foreign patent
> offices, all communications with foreign associates, patent agents,
> or prosecutors, all translations of such documents or

---

[5] BSKB has served the same objections again in response to the January 9, 2009 Subpoena to BSKB.

communications, and all drafts of any of the foregoing documents or communications. (Ex. 17 at Topic 5.)

Any lawsuits, disputes, contested proceedings, interferences, requests for reexamination, reexamination, oppositions, reissues, charges of infringement, or threats to sue that involved or involve the Patents-in-Suit, related patents, or related applications. (*Id.* at Topic 14.)

Any searches or investigations, conducted during the prosecution of the Patents-in-Suit or the related patents or related applications, for prior art or other information regarding the patentability of the subject matter of the Patents-in-Suit or the related patents or related applications, including without limitation all documents obtained, identified or uncovered by any such search or investigation. (*Id.* at Topic 20.)

BSKB's counsel has communicated with CMO's counsel concerning the improper and burdensome scope of the twenty-four deposition topics, including the above examples. CMO's counsel, however, never made any effort to narrow the scope of any of the deposition topics. Accordingly, the Court should quash the subpoena.

### C.   CMO's Third Subpoena Seeks Unnecessary Deposition Testimony

CMO's third subpoena is not only untimely and burdensome, but it seeks deposition testimony that is unnecessary to resolve claims and defenses between LG Display and CMO. As discussed above, CMO already has obtained the discovery that it deemed necessary to pursue, including document production from BSKB and both document production and deposition testimony from LG Display. "Where proof of either relevance *or* need is not established, discovery is properly denied." *Mannington Mills, Inc. v. Armstrong World Industries, Inc.*, 206 F.R.D. 525, 532 (D. Del. 2002) (granting a motion to quash and quoting *American Standard Inc. v. Pfizer Inc.*, 828 F.2d 734, 743 (Fed. Cir. 1987) (emphasis in original)).

CMO's affirmative decision to abandon any deposition of BSKB before the December 17 deadline confirms that CMO does not need deposition testimony from CMO. CMO's only

purported basis for changing course and issuing a new subpoena is that BSKB has completed its document production. CMO knew that BSKB's production was complete as of December 2, 2008, however, when CMO's counsel confirmed that no deposition was necessary.

In any event, the deposition of a law firm that previously prosecuted certain disputed patents is not necessary, especially given the substantial discovery already conducted concerning those patents. Further, CMO has not alleged in any pleading any claim or defense concerning BSKB's prosecution of the '321 Patent or '489 Patent and the time to amend pleadings expired in August 2008. Therefore, the Court should quash the subpoena.

**D.    CMO's Third Subpoena Improperly Seeks Privileged Information**

The attorney-client privilege applies to confidential communications between attorneys who prosecute patents and their clients. CMO's third subpoena, however, ignores the privilege and affirmatively seeks to invade privileged communications. The subpoena includes deposition topics that specifically seek privileged information, including, for example:

> Communications relating to the prosecution of the Patents-in-Suit or of the related patents or related applications, including, without limitation, communications to or from you, any inventor, any patent office, patent examiner, patent agent, patent attorney, or prior art searches. (Ex. 17 at Topic 3.)

> Communications relating to the Patents-in-Suit or the subject matter thereof, or the related patents or the related applications, including without limitation all communications to or from you and/or communications to or from any third parties, including LG Display and/or any inventors. (*Id.* at Topic 12.)

> Communications relating to this lawsuit or any other lawsuit involving the Patents-in-Suit, including without limitation all communications to or from you and/or communications to or from any third parties, including LG Display and/or any inventors, and all documents relating or referring to any such communications. (*Id.* at Topic 13.)

CMO is not entitled to discovery as to BSKB's privileged communications with its clients concerning the prosecution of the '321 Patent and '489 Patent. In response to the same deposition topics in CMO's September 2008 subpoena, BSKB specifically objected to those topics and asserted the attorney-client privilege and work product doctrine. CMO, however, has never agreed not to seek privileged information from BSKB. Accordingly, the Court should quash the subpoena.

## III.   THIS COURT MAY TRANSFER THIS DISPUTE TO THE DISTRICT OF DELAWARE WHERE THE UNDERLYING CASE IS PROCEEDING

This Court has the authority to resolve motions to quash or modify third party depositions concerning proceedings in other districts. *See, e.g., Static Control Components, Inc. v. Darkprint Imaging*, 201 F.R.D. 431, 434 (M.D.N.C. 2001). Therefore, BSKB has filed its motion in this Court, rather than in the U.S. District Court for the District of Delaware. If this Court prefers to defer to the District of Delaware, however, then BSKB does not object, provided that this motion and all related briefing is transferred to the District of Delaware or BSKB is otherwise permitted to file motion papers seeking the same relief in that Court. *See, e.g., U.S. v. Star Scientific, Inc.*, 205 F. Supp. 2d 482, 488 (D. Md. 2002) (transferring a discovery dispute concerning a non-party subpoena to the court where the underlying case was pending because of the complexity and scope of the underlying litigation).

## IV.   BSKB SHOULD BE AWARDED COSTS FOR DEFENDING AGAINST CMO'S UNTIMELY SUBPOENA

BSKB respectfully requests that the Court require CMO to pay the costs and attorneys' fees incurred in responding to CMO's improper third subpoena. Specifically, BSKB requests that the Court require payment of all costs and attorneys' fees incurred: (i) to prepare objections to the third subpoena; and (ii) concerning the preparation of this motion and any hearing on this motion, including any related expenses. In issuing a subpoena, a party is obligated to "take

reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena." Fed. R. Civ. P. 45(c). Failing to prevent undue burden or expense subjects the party issuing the subpoena to "an appropriate sanction," which may include attorneys' fees. *Id.* Because CMO refused to withdraw or narrow its untimely and improper third subpoena, CMO should be required to pay the attorneys' fees and expenses caused by its conduct.

## CONCLUSION

For the foregoing reasons, the Court should quash the subpoena that CMO issued to BSKB on January 9, 2009. In the alternative, the Court should enter an order that modifies and limits the scope of any deposition testimony to be provided by BSKB. Further, BSKB respectfully requests that CMO be ordered to pay all costs, expenses, and attorneys' fees concerning the objections to the subpoena and this motion, including any hearing, and for such further relief as the Court deems just and proper.

Respectfully submitted,

Dated:  January 27, 2009

Shari L. Klevens (VSB No. 44257)
Lora A. Brzezynski (VSB No. 46011)
Attorneys for Birch, Stewart, Kolasch & Birch, LLP
MCKENNA LONG & ALDRIDGE LLP
1900 K Street, N.W.
Washington, DC 20006
Tel:  202-496-7500
Fax:  202-496-7756
E-mail:  sklevens@mckennalong.com

18